**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                        :
                                                    :
                    Plaintiff,                      :    Case No. 1:21-cv-6895
                                                    :
v.                                                  :
                                                    :    **COMPLAINT FOR VIOLATIONS OF**
TRANSLATE BIO, INC., RONALD C.                      :    **SECTIONS 14(e), 14(d) AND 20(a) OF**
RENAUD, JR., OWEN HUGHES,                           :    **THE SECURITIES EXCHANGE ACT**
DANIELLA BECKMAN, GEORGE                            :    **OF 1934**
DEMETRI, M.D., JEAN-FRANÇOIS                        :
FORMELA, M.D., ROBERT J. MEYER                      :    **JURY TRIAL DEMANDED**
M.D., ROBERT M. PLENGE, M.D., PH.D,                 :
                                                    :
                    Defendants.                     :
--------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Translate Bio, Inc. ("Translate Bio or

the "Company") and the members Translate Bio board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection

with the proposed acquisition of Translate Bio by affiliates of Sanofi AG, a company formed under

the laws of France ("Sanofi").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on August 16, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Aventis, Inc., a wholly owned subsidiary of Sanofi, will merge with and into Translate Bio, with Translate Bio continuing as the surviving corporation and as a indirect, wholly owned subsidiary of Sanofi (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated August 2, 2021 (the "Merger Agreement"), each Translate Bio common share issued and outstanding will be converted into the right to receive $38.00 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Translate Bio's outstanding common stock and will expire on September 13, 2021 (the "Tender Offer").

3.     Defendants have now asked Translate Bio's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.  Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Translate Bio's financial projections relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Translate Bio stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Translate Bio's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Centerview Partners, the financial of Translate Bio, is headquartered in this District; Translate Bio stock is traded on the NASDAQ Stock Exchange, also headquartered in this District. *See e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Translate Bio common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Ronald C. Renaud, Jr. has served as a member of the Board since November 2014 and is the Company's Chief Executive Officer.

11.     Individual Defendant Owen Hughes has served as a member of the Board since July 2016.

12.     Individual Defendant Daniella Beckman has served as a member of the Board since October 2017.

13.     Individual Defendant George Demetri, M.D. has served as a member of the Board and since July 2019.

14.     Individual Defendant Jean-François Formela, M.D. has been a member of the Board since 2011.

15.     Individual Defendant Robert J. Meyer, M.D. has served as a member of the Board since January 2019.

16.     Individual Defendant Robert M. Plenge, M.D., Ph.D. has served as member of the Board since April 2019.

17.     Defendant Translate Bio is incorporated in Delaware and maintains its principal offices at 29 Hartwell Avenue, Lexington, Massachusetts, 02421.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "TBIO."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.    **The Proposed Transaction**

20.    Translate Bio, a clinical-stage messenger RNA (mRNA) therapeutics company, develops medicines to treat diseases caused by protein or gene dysfunction. The Company is developing MRT5005, which is in Phase I/II clinical trial for the treatment of cystic fibrosis. It is also developing MRT5500 for the treatment of SARS-CoV-2. The Company was formerly known as RaNA Therapeutics, Inc. and changed its name to Translate Bio, Inc. in June 2017. Translate Bio has a collaboration and license agreement with Sanofi Pasteur Inc. The Company was founded in 2011 and is headquartered in Lexington, Massachusetts.

21.    On August 3, 2021, Sanofi and the Company announced the Proposed Transaction:

> **PARIS and LEXINGTON, Mass – August 3, 2021 –** As part of Sanofi's endeavor to accelerate the application of messenger RNA (mRNA) to develop therapeutics and vaccines, the company has entered into a definitive agreement with Translate Bio (NASDAQ: TBIO), a clinical-stage mRNA therapeutics company, under which Sanofi will acquire all outstanding shares of Translate Bio for $38.00 per share in cash, which represents a total equity value of approximately $3.2 billion (on a fully diluted basis). The Sanofi and Translate Bio Boards of Directors unanimously approved the transaction.
>
> "Translate Bio adds an mRNA technology platform and strong capabilities to our research, further advancing our ability to explore the promise of this technology to develop both best-in-class vaccines and therapeutics," said Paul Hudson, Sanofi Chief Executive Officer. "A fully owned platform allows us to develop additional opportunities in the fast-evolving mRNA space. We will also be able to accelerate our existing partnered programs already under development. Our goal is to unlock the potential of mRNA in other strategic areas such as immunology, oncology, and rare diseases in addition to vaccines."
>
> "Sanofi and Translate Bio have a shared commitment to innovation in the mRNA space. With Sanofi's long-standing expertise in developing and commercializing vaccines and other innovative medicines on a global scale, Translate Bio's mRNA technology is now even better positioned to reach more people, faster," said

Ronald Renaud, Chief Executive Officer, Translate Bio. "The talented and dedicated Translate Bio team has built the foundation of a strong mRNA platform. Our expertise coupled with that of Sanofi has driven significant progress under the collaboration thus far, and we believe that this acquisition will strengthen the team's ability to achieve the full potential of the mRNA technology."

In June 2018, Sanofi and Translate Bio entered into a collaboration and exclusive license agreement to develop mRNA vaccines which was further expanded in 2020 to broadly address current and future infectious diseases. There are two ongoing mRNA vaccine clinical trials under the collaboration, the COVID-19 vaccine Phase 1/2 study with results expected in Q3 2021 and the mRNA seasonal influenza vaccine Phase 1 trial with results due in Q4 2021. The acquisition builds on Sanofi's establishment of a first-of-its kind vaccines mRNA Center of Excellence.

On the therapeutic side, Translate Bio has an early-stage pipeline in cystic fibrosis and other rare pulmonary diseases. In addition, discovery work is ongoing in diseases that affect the liver, and Translate Bio's MRT$^{TM}$ platform may be applied to various classes of treatments, such as therapeutic antibodies or vaccines in areas such as oncology. Sanofi's recent acquisition of Tidal Therapeutics expanded the company's mRNA research capabilities in both immuno-oncology and inflammatory diseases. The Translate Bio acquisition further accelerates Sanofi's efforts to develop transformative medicines using mRNA technology.

**Transaction Terms**

Under the terms of the merger agreement, Sanofi will commence a cash tender offer to acquire all outstanding shares of Translate Bio common stock for $38.00 per share in cash reflecting a total equity value of Translate Bio of approximately $3.2 billion. The purchase price represents a premium of 56% to Translate Bio's volume-weighted average price per share over the past 60 days.

To demonstrate their commitment to the transaction, the chief executive officer of Translate Bio and Translate Bio's largest shareholder, The Baupost Group, L.L.C., have signed binding commitments to support the tender offer. These binding commitments, combined with the Translate Bio shares already owned by Sanofi or its affiliates, represent a total of approximately 30% of Translate Bio's total shares outstanding.

The consummation of the tender offer is subject to customary closing conditions, including the tender of a number of shares of

Translate Bio common stock that together with shares already owned by Sanofi or its affiliates represents at least a majority of the outstanding shares of Translate Bio common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, a wholly owned subsidiary of Sanofi will merge with Translate Bio and the outstanding Translate Bio shares not already owned by Sanofi or its affiliates that are not tendered in the tender offer will be converted into the right to receive the same $38.00 per share in cash paid in the tender offer. The tender offer is expected to commence later this month. Sanofi plans to fund the transaction with available cash resources. Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the third quarter of 2021.

Morgan Stanley & Co. International plc is acting as exclusive financial advisor to Sanofi while Weil, Gotshal & Manges LLP is acting as legal counsel. Centerview Partners is acting as lead financial advisor to Translate Bio in the transaction, while Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel. Evercore is also acting as a financial advisor in this transaction to Translate Bio. MTS Health Partners, LP is also giving financial advice to Translate Bio.

\* \* \*

22.     It is therefore imperative that Translate Bio's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     <u>The Materially Incomplete and Misleading Solicitation Statement</u>**

23.     On August 16, 2021, Translate Bio filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.   The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

7

However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

24.     The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the financial advisors, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning Translate Bio Financial Projections*

25.     The Solicitation Statement fails to provide material information concerning financial projections by Translate Bio management and relied upon by Centerview in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Translate Bio management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

29.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Solicitation Statement not misleading.

30.     The Solicitation Statement also fails to provide what the risk and probability adjustments were assumed and applied for the purposes of preparing the Projections.

31.     As indicated on page 26 of the Solicitation Statement, the Projections "reflect a risk-adjusted outlook, based on certain internal assumptions prepared by Translate Bio management…" but the Solicitation Statement does not explain why only risk-adjusted figures are disclosed.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

32.     With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose: (i) the individual multiples and financial metrics for each of the companies observed by Centerview in its analysis; and (ii) the number of fully-diluted outstanding shares of Company stock as of July 30, 2021.

33.     With respect to Centerview's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the individual multiples and financial metrics for each of the transactions observed by Centerview in its analysis; and (ii) the number of fully-diluted outstanding shares of Company stock as of July 30, 2021.

34.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the range of equity values for Company shares; (ii) the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (iii) the Company's

weighted average cost of capital; (iv) implied terminal value of the Company; (v) the basis for assuming that the Company's unlevered free cash flows would decline in perpetuity after December 31, 2049 at a rate of free cash flow decline of 20% year over year; (vi) the inputs and assumptions underlying the 2% perpetuity growth rate; and (vii) the number of fully-diluted outstanding shares of Company stock as of July 30, 2021.

35.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 9.0% to 12.0%; (ii) Company's estimated cash.

36.     With respect to Centerview's *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose: (i) the price targets for the Company shares observed; and (ii) the identity of the Wall Street research analysts whose reports were reviewed.

37.     With respect to Centerview's *Premia Paid Analysis*, the Solicitation Statement fails to disclose the premiums of the selected transactions.

38.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

41.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

43.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

44.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their

shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

45.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

46.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>**COUNT II**</u>
**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

47.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

48.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

49.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

50.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

13

51.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

52.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>**COUNT III**</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Translate Bio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Translate Bio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Translate Bio, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Translate Bio, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

57.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: August 16, 2021                    **MELWANI & CHAN LLP**

                                          /s *Gloria Kui Melwani*
                                          Gloria Kui Melwani (GM5661)
                                          1180 Avenue of the Americas, 8th Floor
                                          New York, New York 10036

Tel: (212) 382-4620
Email:  gloria@melwanichan.com

*Attorneys for Plaintiff*